**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

DANIEL LOPEZ,

     Petitioner,

    v.

KATHLEEN ALLISON, Warden,

     Respondent.

Case No. 1:11-cv-01335-LJO-SKO-HC

FINDINGS AND RECOMMENDATIONS TO DISMISS STATE LAW CLAIMS AND DENY THE PETITION FOR WRIT OF HABEAS CORPUS (DOC. 1), ENTER JUDGMENT FOR RESPONDENT, AND DECLINE TO ISSUE A CERTIFICATE OF APPEALABILITY

**OBJECTIONS DEADLINE:**
**THIRTY (30) DAYS**

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 through 304. Pending before the Court is the petition, which was filed on August 12, 2011. Respondent filed an answer to the petition with supporting documents from the state court record on October 18, 2011. Although the time for filing a traverse has passed, no traverse has been filed.

    I.  <u>Jurisdiction</u>

    Because the petition was filed after April 24, 1996, the

effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies in this proceeding.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997); <u>Furman v. Wood</u>, 190 F.3d 1002, 1004 (9th Cir. 1999).

The challenged judgment was rendered by the Superior Court of the State of California, County of Tulare (TCSC), which is located within the territorial jurisdiction of this Court.  28 U.S.C. §§ 84(b), 2254(a), 2241(a), (d).  Petitioner claims that in the course of the proceedings resulting in his conviction, he suffered violations of his constitutional rights.  Accordingly, the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 2254(a) and 2241(c)(3), which authorize a district court to entertain a habeas corpus petition by a person in custody pursuant to a state court judgement on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States.  <u>Williams v. Taylor</u>, 529 U.S. 362, 375 n.7 (2000); <u>Wilson v. Corcoran</u>, 562 U.S. -, -, 131 S.Ct. 13, 16 (2010) (per curiam).

An answer was filed on behalf of Respondent Kathleen Allison, who, pursuant to the judgment, had custody of Petitioner at the California Substance Abuse Treatment Facility at Corcoran, California (CSATF), Petitioner's institution of confinement when the petition and answer were filed.  (Doc. 11.)  Petitioner thus named as a respondent a person who had custody of Petitioner within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section 2254 Cases in the District Courts (Habeas Rules).  <u>See</u>, <u>Stanley v. California Supreme Court</u>, 21 F.3d 359, 360 (9th Cir. 1994).  Accordingly, the Court concludes that it has jurisdiction over the person of the Respondent.

1    II.   Background

2          A.   Procedural Summary

3      Petitioner was charged with three counts of sexual intercourse

4  or sodomy with a child ten years of age or younger in violation of

5  Cal. Penal. Code § 288.7(a) (counts 1, 3, 5); twelve counts of lewd

6  or lascivious acts by force or fear upon a child under fourteen

7  years of age in violation of Cal. Pen. Code § 288(b)(1) (counts 2,

8  4, 6, 8, 10, 12, 13-18); three counts of oral copulation or sexual

9  penetration with a child ten years of age or younger in violation of

10 Cal. Pen. Code § 288.7(b) (counts 7, 9, 11); and two counts of

11 willfully inflicting upon a child cruel or inhuman corporal

12 punishment in violation of Cal. Pen. Code § 273d(a) (counts 19 and

13 20).  The information further alleged that as to counts 2, 4, 6, 8,

14 10, 12, and 13 through 15, Petitioner had substantial sexual contact

15 with a child under fourteen years of age within the meaning of Cal.

16 Pen. Code § 1203.066(a)(8).  A jury found Petitioner guilty on all

17 counts and found the special allegations true.  The trial

18 court sentenced Petitioner to an aggregate determinate term of

19 eleven years, plus an indeterminate term of twenty-five years to

20 life.  (LD 4, 2.)[1]

21     Petitioner appealed to the Court of Appeal of the State of

22 California, Fifth Appellate District (CCA) and then sought review of

23 the CCA's affirmance of the judgment in the California Supreme Court

24 (CSC), which denied review on March 16, 2011, without any statement

25 of reasoning or citation of authority.  (LD 4, 6-8.)

26 ///

27 _____

28 [1] "LD" refers to documents lodged by Respondent in support of the
answer.

3

B. <u>Factual Summary</u>

In a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.  28 U.S.C. § 2254(e)(1); <u>Sanders v. Lamarque</u>, 357 F.3d 943, 947-48 (9th Cir. 2004).  This presumption applies to a statement of facts drawn from a state appellate court's decision.  <u>Moses v. Payne</u>, 555 F.3d 742, 746 n.1 (9th Cir. 2009).  The following statement of facts is taken from the opinion of the CCA in <u>People v. Daniel Lopez</u>, case number F057870, filed on December 30, 2010:

**<u>FACTS</u>**

The nine-year-old victim told her teenaged cousin that defendant, the victim's stepfather, had been sexually molesting her since she was eight years old. The cousin and three other female relatives took the victim to the police station.

In her statement, the victim told the detective that, when her mother was at work, defendant made her suck his private part, then put his private part in her butt, which made her bleed. He did this more than 20 times in the master bedroom with the door locked. She had not told her mother or anyone else because defendant threatened to spank her if she did. A recording of this interview was played for the jury. The detective scheduled an examination of the victim by the Sexual Abuse Response Team (SART).

Officers arrested defendant at his work place and took him to the police station. When the detective and another officer interviewed him, he initially denied touching or abusing the victim. But as the officers urged him to tell the truth and told him things would go better for him if he did, he eventually admitted sodomizing the victim "one time only." Then he admitted it happened "[a]bout two times only," then "[l]ike about three" times. He denied

4

engaging in oral copulation, but eventually admitted that the victim orally copulated him.

At no time did the officers threaten or physically hit defendant. They used no physical violence. Nor did they ask defendant to remove his clothing. The interview was recorded on a digital audio recorder that the detective placed in the middle of the table. He did not stop the recorder until the interview was over. The recording of this interview was played for the jury.

At the SART interview conducted by a forensic specialist, the victim described in detail what defendant did to her and what he made her do to him. The acts included sodomy, oral copulation, vaginal penetration, and fondling. Defendant would pull his penis out through a "hole" in his underwear. The abuse occurred nearly every day when the mother was at work. Defendant told the victim he would spank her hard if she told anyone what they were doing. The video of this interview was played for the jury.

A forensic nurse examiner made no findings that showed the victim had been sexually assaulted. The nurse testified it is common to find no injuries in sexually abused children. Anal injuries, for example, usually heal within 24 to 48 hours. The absence of findings did not mean the victim had not been sexually abused.

At trial, the victim recanted her statements. She denied having been molested by defendant and claimed she had lied about the allegations because her cousin and aunt told her what to say and promised her toys and clothes in return. She said she felt bad because her mother was sad that defendant was gone.

The victim's 11-year-old brother testified that defendant hit him and his sisters with a belt. He said the victim told him defendant "did something gross" to her that had to do with body parts.

The victim's mother said defendant admitted injuring the children with a belt. At one time, the mother found blood in the victim's panties, but there was nothing about defendant's relationship with the victim that caused her concern about molestation. She said the victim had trouble having bowel movements, but the victim explained to her it was because she did not drink enough water. Although

defendant did not threaten the mother with violence, he threatened to take their baby and leave. Since defendant was taken into custody, mother cried often and was having financial and emotional difficulties. Defendant tried to reach her every day after he was arrested.

The parties stipulated that the mother told defendant to leave the house when she saw the injuries he had inflicted on the victim's younger sister. Defendant did not want to leave, so he told the mother he would take their baby and call immigration on her. He told her that, as a citizen, he could leave with the baby and she would have no recourse. Defendant sent the mother a letter from jail, professing his love and asking forgiveness. Mother turned over this letter and three others to the police.

Some of the victim's relatives testified that no one told the victim what to say, no one described sex acts to her, and no one promised to buy her anything in return for reporting the abuse. They bought her clothes because she had nothing to wear after she was removed from the home.

A psychologist testified that 24 percent of sexual abuse victims eventually recant their allegations. The most common reason for a child to recant is family pressure. A child who observes the negative effects on family members might think she could improve the situation by recanting.

The victim's eleven-year-old cousin testified that the victim told her she felt bad about telling what happened with defendant.

***Defense Evidence***

A sexual assault nurse examiner reviewed the victim's examination and concluded she appeared normal. Her normal anal area was inconsistent with having been sodomized more than 20 times, although any injury would likely have healed within 48 hours. The lack of findings did not mean the victim had not been abused.

Defendant testified on his own behalf, claiming the police coerced him into confessing. When he denied abusing the victim, the detective stopped the recorder, pushed him against the wall, and threw him to the floor. The officers took him to a different room, stripped him naked, threatened and beat him, and tasered his testicles. When

6

they returned to the interview room, the officers told him
to confess when they turned the recorder back on. The
officers turned off the recorder two or three times.
Defendant was scared and did not want to be hurt again, so
he confessed. At trial, defendant denied all sexual
contact with the victim. He admitted hitting the other
children with a belt, leaving marks.

Defendant's wife said she never saw any change in the
victim's behavior toward defendant, and the victim's
grades did not decline.

***Rebuttal***

The detective and the other officer denied that they ever
stripped, threatened, beat, or tasered defendant. Neither
of them carried a taser or firearm during the interview,
and they never stopped the recorder or removed defendant
from the interview room. The detective also explained that
if his digital audio recorder had been stopped and
started, it would have started a new recording with a new
number.

(LD 4, 2-5.)

III.  <u>Failure to Instruct on the Corpus Delicti Rule</u>

Petitioner argues that he suffered a violation of his Fifth,
Sixth, and Fourteenth Amendment rights to a fair trial and due
process of law from the trial court's failure to instruct the jury
on the corpus delicti rule, which requires a slight showing of
criminal harm and criminal agency by evidence that is independent of
an accused's confession or admissions.

A.  <u>Standard of Decision and Scope of Review</u>

Title 28 U.S.C. § 2254 provides in pertinent part:

(d) An application for a writ of habeas corpus on
behalf of a person in custody pursuant to the
judgment of a State court shall not be granted
with respect to any claim that was adjudicated
on the merits in State court proceedings unless

7

the adjudication of the claim—

(1) resulted in a decision that was contrary to,
or involved an unreasonable application of, clearly
established Federal law, as determined by the
Supreme Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light
of the evidence presented in the State court
proceeding.

Clearly established federal law refers to the holdings, as opposed to the dicta, of the decisions of the Supreme Court as of the time of the relevant state court decision.  Cullen v. Pinholster, - U.S. -, 131 S.Ct. 1388, 1399 (2011); Lockyer v. Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the Supreme Court's or concludes differently on a materially indistinguishable set of facts.  Williams v. Taylor, 529 U.S. at 405-06.  The state court need not have cited Supreme Court precedent or have been aware of it, "so long as neither the reasoning nor the result of the state-court decision contradicts [it]."  Early v. Packer, 537 U.S. 3, 8 (2002).

A state court unreasonably applies clearly established federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively

8

unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.  Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002); see, Williams, 529 U.S. at 407.  An application of clearly established federal law is unreasonable only if it is objectively unreasonable; an incorrect or inaccurate application is not necessarily unreasonable.  Williams, 529 U.S. at 410.  A state court's determination that a claim lacks merit precludes federal habeas relief as long as it is possible that fairminded jurists could disagree on the correctness of the state court's decision. Harrington v. Richter, 562 U.S. -, 131 S.Ct. 770, 786 (2011).  Even a strong case for relief does not render the state court's conclusions unreasonable.  Id.

     To obtain federal habeas relief, a state prisoner must show that the state court's ruling on a claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 786-87.  The § 2254(d) standards are "highly deferential standard[s] for evaluating state-court rulings" which require that state court decisions be given the benefit of the doubt, and the Petitioner bear the burden of proof.  Cullen v. Pinholster, 131 S.Ct. at 1398.  Habeas relief is not appropriate unless each ground supporting the state court decision is examined and found to be unreasonable under the AEDPA.  Wetzel v. Lambert, --

9

U.S.--, 132 S.Ct. 1195, 1199 (2012).

In assessing under section 2254(d)(1) whether the state court's legal conclusion was contrary to or an unreasonable application of federal law, "review... is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S.Ct. at 1398. Evidence introduced in federal court has no bearing on review pursuant to § 2254(d)(1). Id. at 1400. Further, 28 U.S.C. § 2254(e)(1) presumes that a state court's determinations of factual issues are correct, placing on the petitioner the burden of producing clear and convincing evidence to rebut the presumption of correctness. A state court decision on the merits based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceedings. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

With respect to each claim, the last reasoned decision must be identified in order to analyze the state court decision pursuant to 28 U.S.C. § 2254(d)(1). Barker v. Fleming, 423 F.3d 1085, 1092 n.3 (9th Cir. 2005); Bailey v. Rae, 339 F.3d 1107, 1112-13 (9th Cir. 2003). Here, the last reasoned decision on Petitioner's corpus delicti claim was the CCA's unpublished decision on appeal.

B.   The State Court Decision

The pertinent portion of the decision of the CCA is as follows:

The corpus delicti of a crime consists of two elements: (1) the fact of the injury or loss or harm and (2) the existence of a criminal agency as its cause. (People v. Jones (1998) 17 Cal.4th 279, 301.) The principal purpose

10

of the corpus delicti rule is to ensure that the accused does not admit to a crime that never occurred. (*People v. Carpenter* (1997) 15 Cal.4th 312, 394; *People v. Alvarez* (2002) 27 Cal.4th 1161, 1169 ["rule is intended to ensure that one will not be falsely convicted, by his or her untested words alone, of a crime that never happened"].) Thus, the prosecution must establish a corpus delicti independent of the defendant's extrajudicial admissions or confessions. (*People v. Jones, supra*, at p. 301.)

Proof of the corpus delicti may be entirely circumstantial. (*People v. Jones, supra*, 17 Cal.4th at p. 301.) The prosecution's burden consists only of making a prima facie showing "'permitting the reasonable inference that a crime was committed.'" (*People v. Jennings* (1991) 53 Cal.3d 334, 364.) The inference need not be "the only, or even the most compelling, one"; it must merely be "a reasonable one...." (*Id.* at p. 367.) "The amount of independent proof of a crime required for this purpose is quite small; [the Supreme Court has] described this quantum of evidence as 'slight' [citation] or 'minimal' [citation]." (*People v. Jones, supra*, at p. 301.) The corpus delicti rule is not interpreted "so strictly that independent evidence of every physical act constituting an element of an offense is necessary. Instead, there need only be independent evidence establishing a slight or prima facie showing of some injury, loss or harm, and that a criminal agency was involved." (*Id.* at p. 303 .)

When a defendant's extrajudicial statements form part of the prosecution's evidence, the trial court must instruct sua sponte that "a finding of guilt cannot be predicated on the statements alone. [Citations.]" (*People v. Alvarez, supra*, 27 Cal.4th at p. 1170, fn. omitted.) FN1 The trial court's failure to so instruct is harmless error if "it does not appear reasonably probable that a result more favorable to defendant would have been reached in the absence of the error. [Citations.]" (*People v. Beagle* (1972) 6 Cal.3d 441, 455-456, superseded by statute on other grounds as stated in *People v. Castro* (1985) 38 Cal.3d 301, 307-313; *People v. Watson* (1956) 46 Cal.2d 818, 836.) When "the corpus delicti is convincingly established independently of admissions[,] the error of the omission of that instruction cannot be deemed as reversible. [Citations.]" (*People v. Beagle, supra*, at p. 455.)

11

FN1. CALCRIM No. 359 provides: "The defendant may not be convicted of any crime based on (his/her) out-of-court statement[s] alone. You may only rely on the defendant's out-of-court statements to convict (him/her) if you conclude that other evidence shows that the charged crime [or a lesser included offense] was committed. [¶] That other evidence may be slight and need only be enough to support a reasonable inference that a crime was committed. [¶] The identity of the person who committed the crime [and the degree of the crime] may be proved by the defendant's statement[s] alone. [¶] You may not convict the defendant unless the People have proved (his/her) guilt beyond a reasonable doubt."

In this case, the trial court's failure to instruct on the corpus delicti requirement was harmless because the victim's statements fully established the corpus delicti independently of defendant's confessions. The victim explained in detail during her interviews that defendant molested her several times in various manners. This evidence alone was sufficient to establish that a crime had been committed against her. Defendant stresses that the victim recanted her statements at trial, but this did not render those statements inadmissible. Indeed, the victim's prior inconsistent statements were admissible not only for impeachment purposes but "to prove their substance as well." (*People v. Hawthorne* (1992) 4 Cal.4th 43, 55, fn. 4; Evid.Code, §§ 770, 1235.) We conclude it is not reasonably probable an outcome more favorable to defendant would have resulted had the trial court instructed with CALCRIM No. 359. (*People v. Watson, supra*, 46 Cal.2d at p. 836.)

(LD 4, 5-7.)

        C.   Analysis

    Federal habeas relief is available to state prisoners only to correct violations of the United States Constitution, federal laws, or treaties of the United States.  28 U.S.C. § 2254(a).  Federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation.  Wilson v.

Corcoran, 131 S.Ct. at 16; Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Alleged errors in the application of state law are not cognizable in federal habeas corpus.  Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002).  The Court accepts a state court's interpretation of state law.  Langford v. Day, 110 F.3d 1180, 1389 (9th Cir. 1996).

In a habeas corpus proceeding, this Court is bound by the California Supreme Court's interpretation of California law unless the interpretation is deemed untenable or a veiled attempt to avoid review of federal questions.  Murtishaw v. Woodford, 255 F.3d 926, 964 (9th Cir. 2001).  Here, there is no indication that the state court's interpretation of state law was associated with an attempt to avoid review of federal questions.  Thus, this Court is bound by the state court's interpretation and application of state law.

The state court's determination that the failure to instruct on corpus delicti was harmless was not contrary to, or an unreasonable application of, clearly established federal law regarding the corpus delicti rule.  California's corpus delicti rule is a matter of state law.  See, Evans v. Luebbers, 371 F.3d 438, 442-43 (8th Cir. 2004) (claim concerning a similar corpus delicti rule that required some slight proof of human agency before admission of a confession did not involve federal constitutional rights); Jacobs v. Horn, 395 F.3d 92, 112-13 (3d Cir. 2005) (failure to instruct on the corpus delicti in violation of state law did not violate federal due process of law); Major v. Johnson, 92 F.3d 1385, 1393-94 (5th Cir. 1996) (noting that petitioner cited no authority for the proposition that application of a state corpus delicti rule is constitutionally mandated); see also Gerlaugh v. Lewis, 898 F.Supp. 1388, 1410 (D.

13

Ariz. 1995), aff'd. by Gerlaugh v. Stewart, 129 F.3d 1027 (9th Cir. 1997), cert. den. Gerlaugh v. Stewart, 525 U.S. 903 (1998) (claimed violation of the corpus delicti rule presented only a state law question and thus did not warrant habeas relief); Baltazar-Monterrosa v. Palmer, no. 3:10-cv-00002-RCJ-WGC, 2013 WL 944799, *13-*14 (D.Nev. March 7, 2013) (unpublished) (where there was independent evidence of guilt and no showing of a violation of any federal constitutional right, a claim concerning application of a state corpus delicti rule did not result in a decision that was contrary to, or an unreasonable application of clearly established federal law or an unreasonable determination of fact in light of the evidence presented to the state court, and was only a matter of state law).

Here, the record contained independent evidence of Petitioner's guilt consisting of pretrial statements of the victim to her cousin, her brother, and a detective, including the recording of the interview that was played before the jury; the victim's mother's observation of blood in the victim's underwear; and evidence that the recanting victim felt bad for reporting the Petitioner's molestation.  Thus, the state court decision that the failure to instruct on the corpus delicti rule was harmless was not objectively unreasonable.

Petitioner generally argues that the failure to instruct rendered the trial fundamentally unfair, deprived the verdict of any reliability, and lowered the prosecution's burden of proof.  The only basis for federal collateral relief for instructional error is that the infirm instruction or the lack of instruction by itself so infected the entire trial that the resulting conviction violates due

process.  Estelle, 502 U.S. at 72; Cupp v. Naughten, 414 U.S. 141,
147 (1973); see Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)
(it must be established not merely that the instruction is
undesirable, erroneous or even "universally condemned," but that it
violated some right guaranteed to the defendant by the Fourteenth
Amendment).  Further, the instruction may not be judged in
artificial isolation; it must be considered in the context of the
instructions as a whole and the trial record.  Estelle, 502 U.S. at
72.  The Estelle Court emphasized that the Court has defined the
category of infractions that violate fundamental fairness very
narrowly, and that beyond the specific guarantees enumerated in the
Bill of Rights, the Due Process Clause has limited operation.  Id.
at 72-73.

　　　Even if there is instructional error, a petitioner is generally
not entitled to habeas relief for the error unless it is
prejudicial.  The harmless error analysis applies to instructional
errors as long as the error at issue does not categorically vitiate
all the jury's findings.  Hedgpeth v. Pulido, 555 U.S. 57, 61 (2008)
(citing Neder v. United States, 527 U.S. 1, 11 (1999) (quoting in
turn Sullivan v. Louisiana, 508 U.S. 275 (1993) concerning erroneous
reasonable doubt instructions as constituting structural error)).
In Hedgpeth v. Pulido, the Court cited its previous decisions that
various forms of instructional error were trial errors subject to
harmless error analysis, including errors of omitting or misstating
an element of the offense or erroneously shifting the burden as to
an element.  Hedgpeth, 555 U.S. 60-61.  In determining whether a
petitioner pursuant to § 2254 suffered prejudice from such an
instructional error, a federal court must determine whether a

15

petitioner suffered actual prejudice by assessing whether, in light of the record as a whole, the error had a substantial and injurious effect or influence in determining the jury's verdict.  <u>Hedgpeth</u>, 555 U.S. at 62; <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 638 (1993).

Here, with the exception of a claim of ineffective assistance of counsel, Petitioner has not alleged that he suffered any other specific constitutional violation in the course of the trial proceedings.  Similarly, Petitioner has not pointed to any other deficiency or error in the instructions given.  The state court reasonably determined that the omission of the corpus delicti instruction was harmless because there was substantial evidence of Petitioner's guilt independent of Petitioner's confession and admissions.  The jury was also instructed on its duty to find the facts from evidence, the difference between direct and circumstantial evidence, the standards for evaluating circumstantial evidence and the credibility of witnesses, use of pretrial statements of a witness, and consideration and evaluation of pretrial statements and admissions, including the need to consider any pretrial statements of the defendant along with all the other evidence.  (LD 15, 4 RT 556-57, 559-61, 563, 566-68.)

In summary, in light of the evidence and the instructions given, no fundamental unfairness appears.

With respect to the burden of proof, due process of law requires that the government prove beyond a reasonable doubt every fact necessary to constitute the charged offense.  <u>In re Winship</u>, 397 U.S. 358, 364 (1970).  However, the Constitution requires only that the jury be instructed on the necessity that the defendant's guilt be proved beyond a reasonable doubt; it does not require that

any particular form of words be used in advising the jury of the government's burden of proof.  <u>Jackson v. Virginia</u>, 443 U.S. 307, 320, n.14 (1979).  Taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury.  <u>Victor v. Nebraska</u>, 511 U.S. 1, 5 (1994).

Here, the jury was instructed on the presumption of innocence, the requirement of proof beyond a reasonable doubt, and the substantive elements of the charged and lesser offenses and the special allegations.  (LD 15, 4 RT 554-55, 561-62, 568-77.)  In light of the evidence in the record and the instructions given, it does not appear that the failure to instruct on the corpus delicti rule affected the burden of proof.

Petitioner contends he was prejudiced because the prosecutor argued to the jury that Petitioner had confessed and then stated, "I mean, what more do you want?"  (LD 15, 4 RT 584.)  Review of the challenged argument shows that the prosecutor's remarks were preceded by a detailed review of the victim's recorded interview and numerous specific arguments based on the contents and circumstances of the child's statement itself.  (<u>Id.</u> at 581-84.)  The prosecutor then argued that the confession had not been involuntary or coerced and was consistent with the victim's statement.  (<u>Id.</u> at 584-89.)  The defense argued that the confession was coerced; due to the influence of other family members, the victim had not told the truth in her pretrial statements; and corroborative physical evidence of sexual abuse was lacking.  (<u>Id.</u> at 602-21.)  The prosecutor's rebuttal focused on the inconsistencies in the defense and the insignificance of the lack of physical evidence of injury to the victim.

The jury was also specifically instructed that if it believed that an attorney's comment on the law conflicted with the court's instructions, it was to follow the court's instructions.  (Id. at 553.)  There was no argument that would reasonably have been understood as inviting the jury to disregard all the evidence except the confession or that would otherwise have had a substantial or injurious effect or influence in determining the jury's verdict.

In sum, it will be recommended that Petitioner's claim regarding failure to instruct on the corpus delicti rule be dismissed insofar as it is based on state law, and denied insofar as it is based on a violation of the Constitution.

IV.   <u>Ineffective Assistance of Counsel</u>

Petitioner argues that his trial counsel's failure to request an instruction on the corpus delicti violated Petitioner's right to the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments.

To demonstrate ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments, a convicted defendant must show that 1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all the circumstances of the particular case; and 2) unless prejudice is presumed, it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687-94 (1984); <u>Lowry v. Lewis</u>, 21 F.3d 344, 346 (9th Cir. 1994).  A petitioner must identify the acts or omissions of counsel that are alleged to have been deficient.  <u>Strickland</u>, 466 U.S. 690.  This standard is the same

standard that is applied on direct appeal and in a motion for a new trial.  Strickland, 466 U.S. 697-98.

In determining whether counsel's conduct was deficient, a court should consider the overall performance of counsel from the perspective of counsel at the time of the representation. Strickland, 466 U.S. at 689.  There is a strong presumption that counsel's conduct was adequate and within the exercise of reasonable professional judgment and the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 688-90.

In determining prejudice, a reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding.  Strickland, 466 U.S. at 694.  In the context of a trial, the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt.  Strickland, 466 U.S. at 695.  This Court must consider the totality of the evidence before the fact finder and determine whether the substandard representation rendered the proceeding fundamentally unfair or the results thereof unreliable. Strickland, 466 U.S. at 687, 696.  A court need not address the deficiency and prejudice inquiries in any given order and need not address both components if the petitioner makes an insufficient showing on one.  Strickland, 466 U.S. at 697.

Here, the state court reasonably determined that the instructional error was harmless and that it was not reasonably probable that an outcome more favorable to Petitioner would have resulted if the jury had been instructed on the corpus delicti rule. The evidence supports the conclusion that the omission was harmless. The victim's pretrial statement to law enforcement specifically

19

detailed acts of sodomy, oral copulation, vaginal penetration, and fondling.  There was additional evidence consisting of statements to other family members and the mother's observation of blood in the victim's underwear.  Because there was more than the marginal evidence required by state law before consideration of Petitioner's confession, the Petitioner could not show that any prejudice resulted from counsel's failure to request the corpus delicti instruction.

The Court concludes that Petitioner has not shown that counsel's omission was prejudicial.  Accordingly, it will be recommended that Petitioner's claim of the ineffective assistance of counsel be denied.

V.   <u>Certificate of Appealability</u>

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court.  28 U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).  A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right.  § 2253(c)(2).  Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 336 (quoting <u>Slack v. McDaniel</u>, 529 U.S.

473, 484 (2000)). A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether: (1) the petition states a valid claim of the denial of a constitutional right, and (2) the district court was correct in any procedural ruling. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong. Id. An applicant must show more than an absence of frivolity or the existence of mere good faith; however, the applicant need not show that the appeal will succeed. Miller-El v. Cockrell, 537 U.S. at 338.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner. Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, it will be recommended that the Court decline to issue a certificate of appealability.

VI.  Recommendations

In accordance with the foregoing analysis, it is RECOMMENDED that:

1) The state law claims in the petition for writ of habeas corpus be DISMISSED without leave to amend;

2) The remaining claim or claims in the petition for writ of habeas corpus be DENIED;

3) Judgment be ENTERED for Respondent; and

4) The Court DECLINE to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the

provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **July 7, 2014**                        **/s/ Sheila K. Oberto**
                                    UNITED STATES MAGISTRATE JUDGE